## Mason County, et al. v. Hayswood Hospital of Maysville.

(Decided November 23, 1915.)

### Appeal from Mason Circuit Court.

1. Taxation—Public Charities.—A hospital which was founded and endowed as a charity and is so conducted and the public receives all the benefits and no private gains received by anyone, and none intended to be received by anyone, it is purely public charity and not subject to taxation.

2. Taxation—Public Charities.—The fact that a hospital so founded and endowed receives compensation from some of the patients does not change its status as a purely public charity.

W. H. REES for appellants.

WORTHINGTON, COGHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Upon the plea that it is an institution of purely public charity appellee brought this action to restrain the sheriff and assessor of Mason county from listing for taxation, or levying upon, or selling, any of its property for taxes.

Appellants demurred to the petition. The demurrer being overruled they bring this appeal, having declined to plead further. Only two questions are raised for decision. (1) Is the appellee an institution of purely public charity within the meaning of section 170 of the Kentucky Constitution? (2) If an institution of purely public charity, does the exemption from taxation apply to its property which is not directly connected with the hospital and not used for hospital purposes, although the income therefrom is used solely in meeting the necessary expense of the hospital?

The idea of this hospital originated in 1907 with Mrs. Mary V. Wilson, an elderly widow, residing in Maysville. She conceived the idea of founding the hospital and conveyed the property now used as a hospital to Dr. Thos. E. Pickett, J. Foster Barbour, Clarence L. Sallee, and A. M. J. Cochran, as trustees, and gave them powers of succession. The trust imposed was, "The establishment and maintenance and operation on said premises of a hospital for the treatment of sick and disabled persons." The trustees were directed to adopt and put in force such rules and regulations as would best carry out the trust. If need be, they might incorporate, and if the incorporation issued stock, then "if any returns arise from said stock they will apply them in providing treatment in said hospital for the worthy poor of Maysville." The conveyance further stipulated that the trustees "are to render their services without compensation."

The trust was accepted, and, in 1908, the trustees formed a corporation under the provisions of sections 879 to 883, inclusive, of the Kentucky Statutes. The trustees were the incorporators "as a charitable corporation

having no capital stock, under the corporate name of 'Hayswood Hospital.' "

In 1911 the corporation accepted from Mrs. Fannie A. Hays a conveyance of a tract of land situated five miles from Maysville, containing about 150 acres. The trust expressed in the deed was to provide at the hospital "medical and surgical treatment, and for necessary maintenance while undergoing treatment, to poor persons in need of same, and not able in whole or part to provide the same for themselves." This conveyance also stipulated that the trustees shall serve without compensation. In 1912, McIlvaney devised $1,000 and his residuary estate to the hospital in trust for the purpose of establishing a "free ward for the treatment of children whose parents or friends are not able to pay for their treatment, the trustees to be the sole judges of who may receive free treatment." Since then the trustees have received, upon substantially the same terms, two other bequests aggregating $4,800. The above is all the property owned by the hospital. It is alleged in the petition that the trustees have maintained and operated the hospital pursuant to the trust provisions of the deeds referred to and from which "no private pecuniary profit has ever been, or can ever be, derived;" they have made valuable and permanent improvements on the hospital property and equipped it with medical and surgical appliances and employed trained nurses and attendants.

The funds with which the hospital has been equipped and operated,

"Have been derived in part from private donations * * * and in part from the moneys received from sick and disabled persons who have been treated therein * * * the receipt from patients at plaintiff's hospital have never been sufficient to defray the expense thereof and keep up and maintain the hospital, nor is it the purpose of plaintiff ever to make it a paying institution. It has kept the balance of the money so given it, after paying for needed improvements and repairs, invested so as to yield an income to be applied to the making up of the deficiency in the necessary running expenses; in other words, as an endowment fund. This fund amounts to about $11,500. * * * The purpose of plaintiff is, as soon as it can be done, to make other improvements on said hospital building."

We are of opinion that the petition sufficiently shows that the hospital is an institution of purely public charity. It is not operated for profit. It is unnecessary to enter into an extended discussion of the questions raised, for both have many times been passed on by this court. The recent cases of City of Dayton v. Speer's Hospital, 165 Ky., 56; Commonwealth v. Board of Education Methodist Episcopal Church, 166 Ky., 610, and many other cases therein cited, conclusively settle the question. Since the opinion of the lower court is in harmony with the law as set forth in these opinions, the judgment is affirmed.